Mr. Bachrach. May it please the court. Good morning, Joshua Bachrach. I represent the appellants in this case. At the center of this appeal is a very narrow issue, and that is whether the district court erred when it awarded disability benefits to the claimant, contrary to the plain language in this ERISA plan. The facts here are very much agreed upon. Mr. Hampton was a commercial truck driver when he stopped working. He stopped working after he was diagnosed with diabetes mellitus, and that diagnosis precluded him from keeping his commercial driver's license. The problem with this claim, however, is that under the plain language in the policy, that doesn't qualify for benefits. And since that language is so important to this case, I'm going to read it directly. If you are employed by the policyholder and require a license for such occupation, the loss of such license for any reason does not in and of itself constitute a total disability. But that's exactly what the court did here. The court said not only is the reason for the loss of license relevant, it was determinative to the district court. And that's contrary to the plain language. Based on the any reason language for the loss of license in this plan, my client reasonably said that there must be something more. There must be actual limitations based on that condition. And in here, there are none. We know that they don't continue. Initially it was. Initially when this arose, his diabetes was such that he was required to take insulin, and it was a medical factor. It was clearly, but the question is whether that diagnosis alone creates any limitations. And you're right, Your Honor. When he stopped working, he was impaired for a short period of time. But there's a... And you paid for that period of time. And that was under the short-term disability plan, which does not include the loss of license language. So a material duty of his job is to have a commercial driver's license. And under the short-term disability plan, he couldn't do that. But we see in the long-term disability plan, which is a separate plan, it specifically says that a loss of license for any reason does not qualify for disability. So there are two completely different plan requirements here. And here... But under the short-term plan, did the company conclude that he could not perform the functions of his job during that short-term period? The short-term disability, my understanding is that it relies solely on the loss of license. That because he lost his license, he couldn't. Although there was one week of... At least one week, and maybe a few, where he couldn't work because he was in the hospital. And clearly he was getting medication so that his diabetes mellitus could be controlled. And we know... Then that wouldn't have been strictly the loss of license. That would have been a medical problem that precluded him from doing the work. Clearly. And this plan has an elimination period for the long-term disability. And that's what's being sought here, is the long-term disability. So you have to be totally disabled throughout this elimination period, which I believe is 90 consecutive days to qualify. So we know after he left the hospital, his diabetes is well-controlled. He's no longer exhibiting any symptoms. In fact, he says he felt better than he did in several months. So the only thing at that point that prevented him from returning to work was the loss of license. And again, for any reason, that doesn't qualify. So does that mean that the insurance company disagreed with the government's regulation in a sense? The government thinks that there's too much risk that a man like this will have a problem as an over-the-road trucker that would cause a safety danger. And therefore they don't let him drive. Are you saying the insurance company thinks that blanket rule by the government is wrong, that there is no medical reason why a diabetic cannot drive if he has certain regimen in place and certain success in managing the problem? I think there are a few answers to that. One is that it's not necessarily wrong. The government is at liberty to do that. But the Supreme Court of the United States has said that ERISA plans have great leeway in designing their own coverage. Yeah, I know that. But I'm talking as a factual matter. As a factual matter? The government thinks that he's too much of a risk to safety to let him drive. And therefore the medical problem precludes him from getting a license. Is the insurance company saying, no, we don't think that there's any medical reason why he can't drive. We're not worried about, we don't agree with these reasons the government gives for the blanket rule. Is that what it comes down to? I think what the plan is saying is that the government has its own interests, which is to design a rule which may be broader than an ERISA plan has to follow. In fact, we saw that this is no different than what we saw in Black and Decker Disability Plan v. Nord. The Supreme Court addressed this issue in the context of the treating physician rule and Social Security regulations. And what the court there said was, you have this large system and to make things easier for the Social Security Administration to administer claims, they can make these presumptions. They can have a treating physician rule. They can say that certain diseases are presumptively disabled. And it makes it easier for them to adjudicate those claims. But it said it doesn't necessarily make them more accurate. And so that's the same situation we have here. The court said that it's okay for the Social Security to do that, but you can't import those rules into ERISA plans based on the leeway that they have in designing them. What if all the doctors opined that there was a substantial risk that he would lose consciousness while driving and therefore shouldn't be driving? What if that was all the evidence in the record? Would that change your position? It might. It very well might. If we had evidence that if he is back on the road, he has a substantial likelihood that he will pass out, he will have a seizure, then that would probably have changed their decisions. Fortunately here, that's not the fact in the record. The only thing that this doctor said, the treating doctor said, was he cannot drive because he has the diagnosis, therefore he cannot have a commercial driver's license. In fact, every note from this doctor said, it's well controlled. He has no symptoms. And so that might be a concern, Your Honor. But it's not a concern in this case where we know for a fact that he didn't have these problems. No doctor expressed that kind of concern in this case? Not a single doctor, not even his own. And the District Court in fact recognized that in the decision. So that's not a factor that we really need to worry about in this case. So what we have here, Your Honors, is that the District Court did a few things. One, and none of which are allowed. One is, it read out of this plan the language that says a loss of license for any reason does not in and of itself constitute a disability. And that can't be done. That's a basic tenant of contract interpretation, let alone ERISA. The District Court also imputed into this plan this loss of license from the CDL regulations. And again, you cannot put language into a plan. That is contrary to ERISA plan interpretation, as well as just basic contract interpretation. But the other problem that we have here is that this plan grants discretion to Reliance Standard. So Reliance Standard, all it had to do was come up with a reasonable interpretation. It didn't even have to be the best. And while I think it's the only reasonable interpretation, based on that language regarding loss of license for any reason, Reliance Standard said there must be more. There must be actual limitations. And there just aren't any in this case. There are no actual limitations. And this isn't something that's new to this Court. This Court has recognized that diagnoses alone do not equate to disabilities. This Court said this in Coker v. MetLife, a case more recently in Green v. Union Security. The Court said the same thing. It was a different disease. It was fibromyalgia. But the Court said the diagnosis of fibromyalgia by itself does not equate to a total disability. There must be limitations. There must be proven limitations. And here, it is not even alleged that there are any limitations. So you don't think the driver can rely on the rationale behind the CFR? I, you know, that factors related to long-haul driving, such as fatigue, lack of sleep, poor diet and so forth, compound the diabetic problem because of these inherent dangers. A diabetic uses insulin, does not meet the minimum physical requirements to drive an over-the-road truck. And the insurance company never disagreed with that. It just never spoke to it one way or the other. And no doctor said he agreed with that. So we just have the regulation and silence from the doctors and the insurance companies as to whether that's a legitimate concern. That's how I'm looking at it. Do you have anything to add to that? Well, I think, I would say that that is a generalization that was made by the Department of Transportation regarding everybody, not everybody, I should, let me take that back, regarding people in general with diabetes mellitus. It's not this individual. And so therefore it's no different than what we had, as I said, in Black and Decker v. Nord, where you had generalizations regarding conditions and opinions of treating doctors. Well, I was just wondering, why is it that we know it's not this individual? And I think your position is it's their burden to show it is this individual and they didn't put on any medical evidence. Correct. They could have proven that this individual does have these problems, these specific issues that were identified in general by the Department of Transportation do apply to him because he has uncontrolled diabetes and there are people that have that. There are people who can't regulate it. Did the records show how he is currently being treated for diabetes? We only know from about a year and a half after the claim was submitted and he was insulin dependent. It was controlled through insulin, but we know that it was well controlled. Which would still be medically disqualifying under the federal rates. It is still. It doesn't matter no matter what, if you have the diagnosis, even if you've been well controlled for 10 years, you can't. So doesn't it matter that the reason the license is not available to him is the medical condition that he has rather than DWI or some other reason? It would if this policy did not say that if your employer requires a license for the occupation, the loss of such license for any reason does not in and of itself. In and of itself, which means if you think of it without being connected to anything else, if it's connected to his actual physical condition, that would seem to be different. Well, Your Honor, my client has deference and discretion to interpret it. They interpret the in and of itself to mean the loss of license without any actual limitations. And I think that that is a reasonable interpretation here. Well, was there a dispute at the district court about the level of deference to be given because of the potential for conflict when you are defining and interpreting your own policy? And that's another issue that we believe the district court erred in. What the district court said is this is a close call, but based on the structural conflict of interest, we're going to rule for Mr. Hampton. The problem is the court didn't identify any reason why the structural conflict was important. In Green v. Union Security, that recent case I mentioned earlier, this court said that because the district court didn't identify any bias or way in which the decision, the conflict influenced the decision, the conflict was at the low point of meaningfulness. It said it's not important in this case. It's almost at the vanishing point, the structural conflict. And the district court here did the same thing. The district court said conflict of interest, therefore, I'm fighting against you. But there was nothing stated by the district court as to why the conflict mattered in this case. Your Honor, I'd like to reserve the remaining time for rebuttal unless the court has any additional questions. Thank you, Your Honor. Mr. Stein? Good morning, Your Honors. My name is Carter Stein and I represent Christopher Hampton. I wanted to start off by trying to answer some of the questions that the court posed to Mr. Bacarat, Judge Colleton. The answer to your question is yes. Reliant Standard did disregard the Department of Transportation regulations. Well, I didn't say disregard. I said did they disagree? I mean, they could say we disagree with the government that everybody who has diabetes is incapable of driving. I mean, I think that could be their position here. They didn't say it that way, but that could be their position here. And then the question is whether that's a reasonable interpretation. What do you say about that? Right. A circuit precedent says that the plan administrator has to evaluate all of the relevant evidence. At the very least, the federal regulations are relevant evidence with regard to whether Mr. Hampton is physically qualified to operate a commercial motor vehicle. 49 CFR 391.11 deals with the general qualifications of drivers. And there are eight subparts to Part B which says a person is qualified to drive a motor vehicle if, and then the driver must meet all eight of those qualifications. Qualification number five says has a currently valid commercial motor vehicle operator's license issued by a state. Clearly here, the loss of the license language in the plan says that losing a license in and of itself does not qualify one for disability benefits. But separate and apart from the license language, and by the way, this is from Appley's appendix page 44. But separate and apart from the license section is Part 4 which says is physically qualified to drive a commercial motor vehicle. So that's a separate requirement for the general qualifications of a driver. But did you have any evidence put in with the company that says the airman didn't meet number four? Well, I thought the doctor just said he's not qualified because he doesn't meet number five. He doesn't have a license. Well, and I think that's a mischaracterization of Dr. Hawkins' statements. Every time Dr. Hawkins filled out a form for reliance standard, he said that Mr. Hampton was not able to drive because he did not meet Department of Transportation regulations, which is separate and apart from the license. The license is issued by the state, in this case the state of Arkansas. The DOT regulations, or DOT and the Federal Motor Carrier Safety Administration, they issue the medical certificate. That's what the federal regulations are. Dr. Hawkins always couches his opinion in the DOT regulations. Do you mean the state DOT? Excuse me. The state DOT? You mean the State Department of Transportation? Or the federal DOT? Federal DOT issues these regulations, and those are the regulations that Dr. Hawkins is referencing. Excuse me. Did he ever couches analysis in terms of the physical limitations on the claimant rather than bringing in the regulations and just describing what he could and could not do physically in his treatment? Well, Dr. Hawkins stated his diagnosis, that he's an insulin-dependent diabetic, and that that prevents him from operating heavy machinery or commercial motor vehicle according to Department of Transportation regulations. Certainly, he did blood tests to see what his sugar levels were. Did he say anything along the lines of, you know, he won't have the strength or the energy or he's likely to pass out or something physical that could be attributed to that? Well, he didn't specifically reference the DOT medical criteria or the interpretation, but when he's saying the DOT regulations, that's what that reference encompasses, that because he is an insulin-dependent diabetic, he has certain risk factors. He's at risk to lose consciousness or become disoriented to time and space. Did the doctor opine that way? He referenced he can't operate commercial motor vehicles or heavy machinery due to Department of Transportation regulations. He didn't specifically write out which regulations. But he didn't link it to any symptom or any manifestation of the diabetes? Nothing other than the fact that his diabetes required insulin use. But he could just be saying, and therefore, the government has a blanket rule that he cannot drive. And apparently, you didn't put any evidence in that the doctors also thought independently that he couldn't drive for medical reasons. Well, the Department of Transportation does have a blanket rule that if you're an insulin-dependent diabetic, you can't drive. And that's a physical qualification, as I referenced in Part 4, which is separate and apart from the licensing part. Yeah, well, the doctor didn't specify which part of the regulation. He just said he just referred to the regulations in general, right? That is correct. Yeah. But the plan is required to review all relevant evidence. And it's clear in this case that they did not review or give any credence to the federal regulations. And that's clear because the plan is arguing that those DOT regulations do not apply because of the Black & Decker case. At the very least, they had to consider the regulations and whether or not Mr. Hampton was going to be able to do his job as a commercial motor vehicle driver. Counsel, does it matter that there's an interpretive difference or, as argued by the appellant, a meaningful difference between the long-term and the short-term plans? I don't believe so. And I briefed that. Because certainly the long-term disability plan has a loss of language section. But both the short-term plan and the long-term plan require that, in this case, Mr. Hampton be able to perform the material duties of his regular occupation. And the material duties of his occupation as a commercial motor vehicle driver require that he follow all federal commercial driving regulations. In the national economy, he cannot work as a commercial motor vehicle driver because he is not physically qualified. And if he can't physically qualify, well, then he can't complete the material duties of his regular occupation. In order for him to meet the standard that Reliance Standard is putting forth, he would have to operate a commercial motor vehicle illegally just to see if these symptoms would manifest themselves. We know that, based on the medical advisory criteria, that as an insulin-dependent diabetic, he's at risk to become drowsy, to go into an insulin shot, to pass out. We know he's at risk. And Reliance Standard has ignored those risks, which is not proper under Eighth Circuit precedent. In the cases of Wilcox v. Liberty Life Insurance Company of Boston, Abram v. Cargill, Inc., Torres v. Unum Life Insurance Company of America, a plan administrator abuses its discretion when it ignores relevant evidence. I also wanted to address, in this case, Reliance Standard hired an endocrinologist, Dr. Cooper. His opinion is more of an any-occupation opinion. At no point did Reliance Standard ask him if Mr. Hampton would be able to perform the material duties of his regular occupation. They never asked him any question about how the federal regulations would impact his ability to operate as a commercial motor vehicle truck driver. And that failure to ask that question of Dr. Cooper, again, gets back to the fact that they didn't take into account the specific demands of Mr. Hampton's profession as a commercial motor vehicle driver. Again, we understand that because he lost his CDL, we understand that that doesn't entitle him to long-term disability benefits. But beyond that, he's not physically qualified, and therefore he cannot perform material duties as a tractor-trailer truck driver because he doesn't meet the DOT regulations, the DOT medical criteria. Mr. Hampton lives in Stuttgart, Arkansas. The state of Arkansas has adopted the Federal Motor Carrier Safety Regulations, so he doesn't comply with Arkansas law. And, again, the job tasks require that he drive his truck in accordance with federal regulations, perform all duties in accordance with company policies and procedures, and comply with all federal, state, and local regulations for the safe operation of a commercial motor vehicle. This gets me into... Do any cases suggest that the administrator has to consider what would be well-known common symptoms when there's no evidence that the particular claimant would suffer these symptoms? Well, in the Miller versus American Airlines case that I cited in the brief, that's a case where a pilot is suffering from anxiety attacks. And in that case, they put forth kind of the general FAA regulations as far as why he shouldn't be able to fly. And the court said, to address the specific demands that Miller would face as a pilot suggests the termination decision was not reasoned and based on an individualized assessment of Miller's ability. For instance, in this case, Reliant Standard is saying, well, Mr. Hampton can drive to church and he can drive to the store. That means he could drive long distances as a truck driver. At no point did Reliant Standard address these risk factors that are available in the medical advisory criteria. Yeah, the problem is no doctor attributed those risks to your client. But it's clear that he has those risks because it is an insulin-dependent diabetic. That's why I asked the question, are there any cases that say they have to, even though it's not in the record, they have to take notice of these common risks? Well, I'm not aware of a case that specifically says that, but it makes common sense. If he is an insulin-dependent diabetic and we know the risk factors for that, they have to consider that, and they didn't do that in this case. And that's why their decision to deny benefits was not reasonable. Okay. Which, again, like I said, that gets back to ignoring the relevant evidence. There's also some other evidence in this case that has been ignored. We hired a vocational expert, Sarah Moore, who put forth a vocational report that said that due to his insulin-dependent diabetes, he would be unable to operate as a commercial motor vehicle driver. That report was unrebutted by Reliant Standard. We don't even know if it was considered. And, again, all relevant evidence must be considered. Again, Reliant Standard has to consider the federal regulations. They can't ignore them based on this Black and Decker versus Nord argument, which is a case dealing with the treating physician rule of the Social Security Administration being applied as a standard in ERISA cases. It's clear that the federal regulations weren't considered, and to not consider them is an abuse of discretion. Reliant Standard has abused its discretion in denying the own occupation benefits for Mr. Hampton, and we would ask this court to affirm the order in judgment issued by Judge Marshall, order in payment of own occupation benefits, 24 months of benefits for Mr. Hampton, as well as affirm the award of attorney's fees. If there's any more questions for the court, I'll be happy to answer them. Thank you. Thank you, counsel. Mr. Bacharach. Thank you, Your Honor. Your rebuttal. I'd like to quickly, because I seem to have used up more time than I wanted to earlier, address some of the comments that were made on page A73 of the appendix, the physician statement sent by Dr. Hawkins. What does he say? Unable to obtain a DOT health card with this new diagnosis. That's the only basis that was stated by the doctor for why he could not work, and that's the treating doctor. My client did not ignore evidence. It disagreed with it. The sole basis for this appeal, you can see that in Mr. Stein's letter of appeal, was he can't work. He specifically said that. That's the sole basis for the appeal was not he's at risk or anything else. Mr. Stein's own letter to my client at appendix page 81, in summary, Mr. Hampton has been diagnosed with insulin-dependent diabetes. This diagnosis prevents him from being a licensed commercial driver under federal and Arkansas law. That's the only basis. Now, I think it's important to say that the federal government and the Department of Transportation, they rely on these generalizations. Let's look at the opposite. What if my client said, well, you're only diagnosed with migraines. That's not really a disabling condition. We don't believe anybody with migraines is totally disabled. That would be arbitrary and capricious because you're generalizing about entire populations of people. You have to look at specific individuals and how their claims are, what facts and medical records pertain to their claims. So just as it would be arbitrary and capricious to generalize that somebody with a condition is not totally disabled, it's the same to say that everybody, regardless of how this condition affects them, is disabled. Well, I don't think the courts have said that this government regulation is arbitrary or capricious. They've said it's a reasonable basis on which to promote highway safety. And when you say your client disagreed with the government's rationale, I wonder where, I wonder what is the basis for that because I didn't see anywhere in the decisions where the administrator said, we don't think that there are these inherent dangers of a diabetic driving over the road trucking. We think that you're an exception to the rule. I see my time's up on my answer, Your Honor. If it's okay with the presiding judge. Please. Thank you, Your Honor. I think you're right, Your Honor. What they're saying is this may be correct in general, but for you, Mr. Hampton, we have all these reports from your doctor saying you're well-controlled diabetes, you're exhibiting no symptoms, and there's no report or opinion that you may, you particularly may have these problems in the future. And that's what it was based on, this individual assessment of his condition, rather than what the Department of Transportation does, which is to look at the condition as a whole. And, Your Honor, just in concluding, we think the district court erred in its interpretation of the plan, its application of the standard of review, and we're asking this court to reverse that decision in its entirety and enter judgment for the appellants. Thank you, Your Honor. I believe that concludes our questioning of you. Thank you very much for your attendance and the briefing which you've submitted. Consider your case submitted. We'll render a decision in due course. Thank you. You may be excused. Madam Clerk, would you call case number two for the morning?